25 RESIDENTS of Sevier County and the United
Transportation Union *v.* ARKANSAS HIGHWAY and
TRANSPORTATION COMMISSION

97-340                                    954 S.W.2d 242

Supreme Court of Arkansas
Opinion delivered October 30, 1997

*Youngdahl, Sadin, Morgan & McGowan*, by: *Thomas H. McGowam* and *Nga Ostoja-Starzewski*, for appellant.

*Robert Wilson*, Chief Counsel and *Tom G. Lorenzo*, for appellee Arkansas State Highway & Transp. Comm'n.

*Friday, Eldredge & Clark*, by: *John Dewey Watson* and *Allison Graves*, for appellee DeQueen & Eastern R.R.

TOM GLAZE, Justice. On January 26, 1996, pursuant to Ark. Code Ann. § 23-12-611 (1987), the DeQueen and Eastern Railroad (Railroad) filed an application to discontinue its agency station in Dierks, Arkansas. The Railroad operates as a rail carrier that transports goods, property, and raw materials in interstate and intrastate commerce. By discontinuing the Dierks agency station, the Railroad intended to consolidate that station with the agency operation in nearby DeQueen, Arkansas. Notice of the proposed discontinuation was filed with the Arkansas Highway and Transportation (AHT) Commission, and it provided the discontinuation would be effective in ninety days.

Twenty-five registered voters, who were residents of Dierks, petitioned the AHT Commission, asking it to reestablish the agency station operation. *See* § 23-12-611(b). The Commission set a hearing on the matter for May 21, 1996, but the hearing was postponed so that the respective parties could brief the following question:

Whether the federal Interstate Commerce Commission (ICC) Termination Act of 1995 preempts state jurisdiction of the discontinuation of railroad agency stations?

*See* 49 U.S.C. § 10101 (1994) *et seq.* On June 4, 1996, the Commission entered its report and order concluding that it no longer had jurisdiction over the matter, because the ICC Termination Act, specifically § 10501, granted the Federal Surface Transportation Board the exclusive jurisdiction over "transportation by rail carriers" as part of the interstate rail network. The Commission's decision resulted in its dismissing the residents' petition.

■ Next, the residents appealed the Commission's decision to the Pulaski County Circuit Court, and the court affirmed the holding of the Commission. The residents then filed this appeal, and assign two points of error by the circuit court. First, the residents argue that the federal act does not preempt § 23-12-611, and the AHT Commission retains jurisdiction over agency station closings in the state. Second, the residents contend that Congress's enactment of the ICC Termination Act violates the Commerce Clause. Only these two questions of law need be addressed to decide this appeal.

In their first point of error, the residents claim that state law is preempted only when it conflicts with federal law, and no conflict is shown to exist in the federal and state laws here. The residents further argue that the federal act not only lacks specific language requiring preemption, but also that the state has long regulated the discontinuation of agency stations under state authority and should continue to do so. The Railroad counters by declaring preemption of § 23-12-611 has been effected by passage of the 1995 ICC Termination Act, and submits such preemption was accomplished in the three ways the Supreme Court sanctioned in *English v. General Electric Co.*, 496 U.S. 72, 78-79 (1990). There, the Court held preemption may occur as follows: (1) express preemption, where Congress defines explicitly the extent to which its enactments preempt state law; (2) field preemption, where Congress's regulation of a field is so pervasive or the federal interest so dominant that an intent to occupy the entire field can be inferred, and (3) conflict preemption, where state law stands as an obstacle

to the accomplishment of the full purposes and objectives of a federal statute.

■■ In any preemption analysis, the overriding principle which must guide our review is whether Congress intended to preempt state law. *Id.; see also Medtronic, Inc. v. Lohr*, 116 S.Ct. 2240 (1996). This analysis depends primarily on statutory and not constitutional interpretation. *Philadelphia v. New Jersey*, 430 U.S. 141 (1977); *see also* 16 AM. JUR. 2d, *Constitutional Law* § 291 at p. 795. Here, Congress's intent is discerned from the act, itself. Section 10501(b)(1) establishes the parameters of the Surface Transportation Board's jurisdiction as follows:

> (1) *transportation by rail carriers, and the remedies* provided in this part *(with respect to)* rates, classifications, rules . . . practices, routes, *services, and facilities* of such carriers; and
> (2) the construction, acquisition, operation, abandonment, or *discontinuance of* spur, industrial team, switching, or side tracks, or *facilities*, even if the tracks are located, or intended to be located, entirely in one State, *is exclusive.* Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law. (Emphasis added.)

Clearly, the act covers "transportation by rail carriers" and the discontinuation of their carriers' related facilities.

■ The next logical question is whether the station agencies are related "facilities" within the meaning of the federal act. Three recent cases from other jurisdictions addressing this issue have answered this question, yes. The Nebraska Supreme Court, in *In re Application of Burlington Northern R. Co. v. Page Grain Co.*, 545 N.W.2d 749 (Neb. 1996), held that the states no longer have jurisdiction over services and facilities of interstate rail carriers, and further decided that the regulation and remedies relevant to rail service agencies are under the exclusive jurisdiction of the federal government. In *CSX Transportation, Inc. v. Georgia Public Service Commission*, 944 F. Supp. 1573 (N.D. Ga. 1996), a United States District Court case came to the same conclusion, holding that the ICC Termination Act preempted the state regulation of railroad agency closings. Finally, the United States District Court in Montana determined that, by the federal act, Congress

expressly preempted state law on railroad agency discontinuations, and further held that state law was preempted by virtue of both field and conflict preemption. *See Burlington Northern Sante Fe Corp. v. Anderson,* 959 F. Supp. 1288 (D. Mont. 1997).

█ Given the broad language of the act itself, its statutory framework, and considering the recent decisions interpreting the act, we believe it is clear that Congress intended to preempt the states' authority to engage in economic regulation of rail carriers. The preemptive strike, we hold, includes regulation of agency station discontinuations. Accordingly, we conclude § 23-2-611, which gives the AHT Commission the authority to regulate such closings, is preempted by the ICC Termination Act of 1995.

In their second point of error, the residents maintain that the act violates the Commerce Clause of the United States Constitution. The residents argue that Congress has exceeded its authority by regulating closings of agency stations. This argument is without merit.

█ In 1981, the Supreme Court held that Congress may regulate (1) the use of channels of interstate commerce, (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities, and (3) activities having a substantial relation to interstate commerce. *Hodel v. Virginia Surface Mining & Recl. Assn., Inc.,* 452 U.S. 264, 276-77 (1981). Congress's authority to regulate extends even to intrastate aspects of the operation of railroads. The law is well settled that Congress has the power to regulate railroad boxcars traveling exclusively intrastate because of their inherent mobility and connection to interstate commerce. *See Southern Ry. Co. v. United States,* 222 U.S. 20 (1911).

█ Contrary to the residents' argument, Congress's authority to regulate even intrastate aspects of railroads under the Commerce Clause is not undercut by recent United States Supreme Court decisions. *See United States v. Lopez,* 514 U.S. 549 (1995). When complete regulation of interstate commerce requires incidental regulation of intrastate commerce, the Commerce Clause authorizes such regulation. *Id.; see also CSX Transp.,* 944 F.Supp. 1573. Congress's regulation of intrastate railroad

agencies under the act is part of a larger regulation of economic activity, in which the regulatory scheme would be undercut unless the intrastate activity were regulated. *Id.* Therefore, the preemptive effect of the act does not violate Congress's power to regulate railroad agency station discontinuations. The dismissal of the residents' petition by the Pulaski County Circuit Court for lack of jurisdiction due to preemption must be affirmed.

Affirmed.