David HALE *v.* STATE of Arkansas

CR 98-910 985 S.W.2d 303

Supreme Court of Arkansas
Opinion delivered February 11, 1999

*Bowden, Kendel & Jones,* by: *David O. Bowden*; and *Tona M. DeMers,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kelly S. Terry,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, David L. Hale, brings this interlocutory appeal of the trial court's denial of his motions to dismiss the State's charges pending against him. Mr. Hale asserts several double jeopardy-based arguments including immunity, preemption, and the exception to the dual-sovereignty doctrine. Mr. Hale also contends that the trial court erred when it granted a mistrial due to an "overruling necessity" under Ark. Code Ann. § 5-1-112(3) (Repl. 1997). We affirm on all points.

Because this is an interlocutory appeal, the complicated and detailed facts of this case have not yet been resolved by the trier of fact. Suffice it to say, the State claims that in July of 1993 Mr. Hale entered into a complex scheme whereby he directed the president of the National Savings Life Insurance Company (NSLIC) to make a false or misleading statement to the Arkansas Insurance Department in violation of Ark. Code Ann. § 23-60-109 (Repl. 1994). The alleged scheme involved Mr. Hale's participation in the affairs of the Small Business Administration, Capital Management Services, Inc., and other business entities. In April of 1994, the Insurance Department referred the matter to the Pulaski County Prosecutor's Office and the Little Rock Police Department for criminal investigation and prosecution.

Around the same time, the Independent Counsel for the Department of Justice began investigating Mr. Hale's business transactions in relation to the "Whitewater" matter. On March 19, 1994, Mr. Hale entered into a plea agreement with the Independent Counsel whereby Mr. Hale agreed to plead guilty to

the felonies of conspiracy and mail fraud and to fully cooperate with the Independent Counsel in its investigation of the White-water matter. In exchange, the Independent Counsel agreed to ask for a reduction in Mr. Hale's sentence, and granted Mr. Hale immunity as follows:

> If David L. Hale fully complies with the understandings specified in this Agreement, he will not be further prosecuted for any crimes related to his participation in the conduct of the affairs of Capital Management Services, Inc., Diversified Capital, Inc., and Madison Guaranty Savings and Loan, and any other crimes, to the extent David L. Hale has disclosed such criminal activity to this Office as of the date of this agreement.

Meanwhile, the state officials continued their investigation of Mr. Hale's alleged false and misleading statement to the Arkansas Insurance Department. In November of 1994, members of the Pulaski County Prosecutor's Office, the Little Rock Police Department, and the Independent Counsel's Office met to discuss the simultaneous investigations. The Independent Counsel expressed his view that it would be highly unusual for a state pros-ecutor to initiate separate criminal charges while an individual was cooperating in a federal investigation. Accordingly, the Independent Counsel may have suggested either that the Prosecu-tor's Office delay filing its charges until after Mr. Hale testified, or that Mr. Hale's dealings with the Arkansas Insurance Department be "taken into account and considered at Mr. Hale's federal sen-tencing hearing." The state Prosecutor did not specifically agree to either request at that time. In fact, in February of 1996, the state Prosecutor sent a letter to the Independent Counsel announcing that he had decided to file separate state charges against Mr. Hale instead of allowing the matter to be addressed at Mr. Hale's federal sentencing.

In April of 1996, Mr. Hale testified as a witness for the Independent Counsel in the criminal trials of Governor Jim Guy Tucker, James McDougal, and Susan McDougal. In December of 1996, the State filed a felony information that charged Mr. Hale with violating Ark. Code Ann. § 23-60-109 by filing a false or misleading statement or document required to be filed by Arkan-sas law.

In response, Mr. Hale filed several motions to dismiss in which he asserted that the subsequent state prosecution was barred by double jeopardy. Specifically, Mr. Hale claimed that the exception to the dual-sovereignty doctrine applied, that the State action was preempted by federal law, and that he was immune from state prosecution pursuant to the March 19, 1994 plea agreement with the Independent Counsel. The trial court rejected each of these arguments, and the case proceeded to trial.

The trial began on Wednesday, April 22, 1998. After the jury was sworn, the court excused the jury for the day because Mr. Hale was not feeling well. The next morning, Thursday, April 23, Mr. Hale did not appear for trial because he had been admitted to the hospital for heart problems. The court granted a seven-day continuance. On Thursday, April 30, the jury convened for the third time. Again, Mr. Hale was not present due to heart problems. Mr. Hale's attorney estimated that Mr. Hale would be released from the hospital on the afternoon of Monday, May 4. Mr. Hale's attorney, however, did not provide the court with a date certain on which Mr. Hale would be available for trial. The only date discussed by the court for rescheduling the trial was in early July. The court then expressed concern over leaving a sworn jury out for over two months in a highly publicized trial. In this respect, the trial judge said, "they [the jury] have been cast onto the stage as actors now, and they can't very well ignore what's going on. Human nature is not that way. There's too big of a chance to run." At this point, the trial court granted the State's motion for mistrial because Mr. Hale's illness was an "overruling necessity" under Ark. Code Ann. § 5-1-112. Soon thereafter, Mr. Hale filed a motion for dismissal in which he declared that double jeopardy prevented the State from bringing him to trial again because there was no "overruling necessity," under Ark. Code Ann. §.5-1-112, for granting the mistrial. The trial court denied the motion.

■ Mr. Hale now brings this interlocutory appeal from the denials of his motions to dismiss the State's charges pending against him. Because these arguments are based on double jeopardy considerations, it is appropriate for us to consider these matters in an interlocutory appeal. *See Edwards v. State*, 328 Ark. 394,

943 S.W.2d 600 (1997), *cert. denied,* 118 S.Ct. 370 (1997); *Rowlins v. State,* 319 Ark. 323, 891 S.W.2d 56 (1995).

## I. Dual Sovereignty

■ ■ The Double Jeopardy Clause of the Fifth Amendment protects a defendant from a second prosecution for the same offense and from multiple punishments for the same offense. *State v. Johnson,* 330 Ark. 636, 956 S.W.2d 181 (1997); *Edwards, supra.* Hence, Mr. Hale claims that his plea agreement with the Independent Counsel bars any subsequent state prosecution. However, the United States Supreme Court has long recognized the dual-sovereignty doctrine, which provides that when a defendant violates the "peace and dignity" of two sovereigns by breaking the laws of each, he or she has committed two distinct offenses, and thus successive prosecutions by the two sovereigns are not barred by the Double Jeopardy Clause of the Fifth Amendment. *See Bartkus v. Illinois,* 359 U.S. 121 (1959) (state prosecution following federal prosecution); *Abbate v. United States,* 359 U.S. 187 (1959) (federal prosecution following state prosecution). Likewise, we recognized the dual-sovereignty doctrine in *State v. Johnson, supra,* where we held that the State could prosecute the defendant for rape even though rape was used for enhancement purposes in the calculation of the defendant's punishment for a federal conviction.

■ In *Bartkus,* the Supreme Court admonished that the dual-sovereignty doctrine would not apply if the subsequent state prosecution was a "sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Bartkus, supra; see also United States v. Basile,* 109 F.3d 1904 (8th Cir. 1997); *United States v. Williams,* 104 F.3d 213 (8th Cir. 1997); *United States v. Garner,* 32 F.3d 1905 (8th Cir. 1994). In other words, the dual-sovereignty doctrine will not apply if the second prosecution is merely an attempt at a second bite at the proverbial apple. The second prosecution is more likely to be considered a "sham or cover" if the first prosecution resulted in an acquittal, or the two sovereigns acted in collusion instead of merely coordinating their investigations or cooperating with one another. *See Bartkus, supra; Basile, supra; Williams, supra; Garner, supra.*

■ Clearly, this case falls under the dual-sovereignty doctrine because, as in *Bartkus* and *Abbate*, the state of Arkansas and the federal government are two separate sovereigns that are entitled to prosecute Mr. Hale for the violation of their respective laws. We find no merit to Mr. Hale's argument that the Arkansas charges are merely a "sham or a cover" for a second federal prosecution because the federal prosecution did not result in an acquittal, and the record establishes that the two sovereigns merely coordinated their simultaneous investigations instead of acting in collusion. In particular, the state Prosecutor chose to file charges in state court instead of allowing the matter to be considered during sentencing in federal court as suggested by the Independent Counsel. Nor is there any indication that the FBI or the Office of the Independent Counsel shared any information from the federal investigation with the state Prosecutor's Office, the Arkansas Insurance Department, or the Little Rock Police Department. At most, the contacts between federal and state officials in 1994 and 1995 involved the coordination of their respective investigations. For these reasons, we conclude that the second state prosecution was not a "sham or cover" for a second federal prosecution. Both sovereigns conducted separate investigations that resulted in separate prosecutions of the criminal charges against Mr. Hale. Accordingly, we affirm the trial court's ruling that the exception to the dual-sovereignty doctrine does not apply in this case.

## II. Immunity

Next, Mr. Hale contends that double jeopardy bars state prosecution because the Independent Counsel gave him transactional immunity from any prosecutions. As previously mentioned, Mr. Hale's plea agreement with the Independent Counsel provided, in relevant part, that:

> If David L. Hale fully complies with the understandings specified in this Agreement, he will not be further prosecuted for *any crimes* related to his participation in the conduct of the affairs of Capital Management Services, Inc., Diversified Capital, Inc., and Madison Guaranty Savings and Loan, and any other crimes, to the extent David L. Hale has disclosed such criminal activity to this Office as of the date of this agreement.

(Emphasis added.) Relying upon the phrase "any crimes," Mr. Hale asserts that the Independent Counsel gave him transactional immunity from all state and federal prosecutions related to the Whitewater transactions. Although we realize that there is a difference between "transactional" immunity, which protects the witness from *prosecution* for offenses to which the compelled testimony relates, and "use or derivative use" immunity, which only protects the witness from the *use* of the compelled testimony and the evidence derived therefrom, *Kastigar v. United States*, 406 U.S. 441 (1972), we need not decide what type of immunity Mr. Hale was given in his agreement with the Independent Counsel. Rather, the relevant inquiry in this appeal involves only what effect, if any, the Independent Counsel's grant of immunity has on the subsequent state prosecution.

In *Kastigar v. United States*, 406 U.S. 441 (1972), the United States Supreme Court held that the Fifth Amendment right against self-incrimination only protected the defendant from use of his incriminating statements, or evidence derived therefrom, but not from prosecution for related crimes. Hence, the Court concluded that even if a state granted transactional or use immunity to a defendant in exchange for his or her incriminating testimony, the federal government could prosecute the defendant for a similar federal crime so long as the federal government could sustain the heavy burden of proving that its evidence was "derived from a legitimate source wholly independent of the compelled testimony." *Id.* Specifically, the Court instructed that:

> Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.

> This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

> * * *

> One . . . need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of

proving that all of the evidence it proposes to use was derived from legitimate independent sources.

*Id.*

Pursuant to *Kastigar*, the Eighth Circuit has held on numerous occasions that in accordance with the dual-sovereignty doctrine, the federal government may prosecute a defendant who has been given transactional or derivative use immunity from a state government so long as the federal prosecutor can sustain the burden of proving that the evidence to be used against the defendant was obtained from a source independent of the protected statements made in state court. *See, e.g., United States v. First Western State Bank*, 491 F.2d 780 (8th Cir. 1974); *United States v. McDaniel*, 482 F.2d 305 (8th Cir. 1973).

In *United States v. First Western State Bank, supra*, the Eighth Circuit explained the concept as follows:

> The United States as a sovereign is not precluded from enforcing its laws by the grant of immunity of another sovereign, in this case the state. However, as a matter of fairness to the defendants and as a constitutional guarantee against self-incrimination, the state immunized testimony cannot be used, directly or indirectly, to prosecute a federal charge. *Murphy v. Waterfront Commission*, 378 U.S. at 79, 84 S.Ct. 1594.
>
> \* \* \*
>
> The sovereign not offering immunity has the undeniable right to protect the integrity of its law enforcement prerogatives by prosecuting anyone who allegedly has committed an offense against its peace and dignity. When its own evidence and investigation discloses acts of criminal activity, an undeniable right to prosecute exists. This right cannot be controlled, thwarted, or diminished by another sovereign granting immunity from prosecution of a kindred offense. Fair play and constitutional guarantees demand, however, that the prosecuting sovereign not use, directly or indirectly, the immunized testimony or any fruits from it. *Kastigar v. United States, supra; Murphy v. Waterfront Commission, supra*. If the prosecuting sovereign has made its independent investigation and can show nonuse of the immunized testimony, either by lack of access to the immunized testimony or direct statements made in good faith that it did not use

the immunized testimony, it should have a clear right to proceed with its own prosecution. However, under *Kastigar* and *Murphy* the prosecuting sovereign does have the burden of showing an independent source for its evidence.

*Id.*

In the case before us today, the trial court held a *Kastigar* hearing to determine if the State's charges were based on evidence obtained from a source independent from Mr. Hale's immunized testimony in the federal proceedings. First, the trial court acknowledged that the deputy prosecutor's father-in-law, Mr. Sam Winstead, attended the federal trial of Governor Jim Guy Tucker and heard Mr. Hale testify. The deputy prosecutor admitted that he discussed the Tucker trial with his father-in-law, but explained that he could not remember the substance of their conversation. The court concluded, and we agree, that this connection was much too remote to cause the State's prosecution to be tainted by the immunized testimony in the federal proceeding.

Second, the trial court found that the state Prosecuting Attorney may have delayed filing its information so as not to conflict with the federal proceedings. In addition, the court found that the Little Rock Police Department coordinated its questioning of certain witnesses so as not to interfere with the federal investigation. The court, however, correctly ruled that two sovereigns may coordinate their investigations so long as the immunized testimony, or evidence derived therefrom, is not shared. We agree that cooperation is all that occurred in this case.

Finally, the court considered the fact that the state Prosecutor had obtained a copy of Mr. Hale's immunized testimony. However, distinguishable from *United States v. McDaniel*, *supra*, the state Prosecutor averred that he did not read any portion of the transcript. The trial court believed this testimony, which is a credibility determination that is best left to the trier of fact, and not this court on appeal. *See Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998); *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). In fact, there was no testimony that the transcript had been read by anyone involved in the State's investigation and prosecution of Mr. Hale.

 For these reasons, we cannot say that the trial court's finding that the state proceeding was independent from the federally immunized testimony, and the evidence derived therefrom, is clearly erroneous. Accordingly, we affirm[1] the trial court's ruling that the state prosecution of Mr. Hale is not barred by the Independent Counsel's grant of immunity in the federal proceeding. In reaching this conclusion, however, we admonish, as the trial court correctly did, that the *Kastigar* issue continues throughout the trial and prevents the State from impermissibly using any of Mr. Hale's immunized testimony, or the evidence derived therefrom, at any point in the state proceeding.

### III. Preemption

Next, Mr. Hale contends that state prosecution is preempted by the Independent Counsel Reauthorization Act of 1994, 28 U.S.C.S § 591 to 599 (1988 & Supp. 1998), which he claims gave the Independent Counsel the sole authority to prosecute any crimes relating to Whitewater. We disagree.

 The doctrine of federal preemption is based upon the Supremacy Clause of the United States Constitution, which provides that state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992). There are three types of federal preemption: 1) express preemption, where Congress defines explicitly the extent to which its enactments preempt state law; 2) field preemption, where Congress's regulation of a field is so pervasive or the federal interest so dominant that an intent to occupy the entire field can be inferred, and 3) conflict preemption, where state law stands as an obstacle to the accomplishment of the full purposes and objectives of a federal statute, or where compliance with both laws is impossible. *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597 (1990); *Twenty-five Residents v. Arkansas Highway & Transp. Comm'n*, 330 Ark. 396, 954 S.W.2d 242 (1997); *Medlock v. Leathers*, 311 Ark. 175, 842 S.W.2d 428 (1992). In his reply brief,

---

[1] In light of our affirmance on this issue, we need not reach the State's alternative argument of collateral estoppel.

Mr. Hale concedes that the Independent Counsel Reauthorization Act does not contain an express preemption provision. Hence, we must only consider whether either of the latter two forms of preemption exits. In making this determination, we start with the presumption that the State's historic powers are not superseded by federal laws unless that is the "clear and manifest" purpose of Congress. *Wisconsin Public Intervenor, supra; Ciba-Geigy Corp., supra.* In *Patterson v. New York*, 432 U.S. 197 (1977), the United States Supreme Court recognized that "the preventing and dealing with crime is much more the business of the State than it is of the Federal Government." Finally, the burden is on Mr. Hale, as the moving party, to prove that Congress intended to preempt state law. *See Ciba-Geigy Corp., supra.*

 First, Mr. Hale contends that federal preemption may be found in section 594(a) of the Independent Counsel Reauthorization Act, which provides in relevant part that:

> Notwithstanding any other provision of law, an independent counsel appointed under this subchapter shall have, with respect to all matters in such independent counsel's prosecutorial jurisdiction established under this subchapter, full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice, the Attorney General, and any other officer or employee of the Department of Justice, except that the Attorney General shall exercise direction and control as to those matters that specifically require the Attorney General's personal action under section 2516 of title 18 [18 USCS § 2516]. Such investigative and prosecutorial functions and powers shall include —
>
> * * *
>
> (9) initiating and conducting prosecutions in *any court of competent jurisdiction*, framing and signing indictments, filing informations, and handling all aspects of any case, in the name of the United States;

28 U.S.C.S. § 594(a)(9) (emphasis added). Mr. Hale argues that the phrase "any court of competent jurisdiction" includes all state courts. Mr. Hale, however, is confusing "concurrent" with "competent" jurisdiction. As explained above, pursuant to the dual-sovereignty doctrine, the state and federal courts have "con-

current" jurisdiction to file criminal charges against a defendant. However, the word "competent" means "duly qualified; answering all requirements; having sufficient capacity, ability or authority." BLACK'S LAW DICTIONARY 294 (6[th] ed. 1990). Likewise, "competent authority" is defined as "jurisdiction and due legal authority to deal with the particular matter in question." *Id.* By using the phrase "competent jurisdiction," it is clear that Congress intended to give the Independent Counsel authority to file federal charges in any *federal* court that had subject-matter and personal jurisdiction. In this respect, "competent jurisdiction" only specifies *where* the Independent Counsel may initiate prosecution. In contrast, in numerous sections of the Act, Congress made it clear that the only *type* of actions the Independent Counsel may file are for violations of "Federal criminal law" or for "Federal crimes." *See, e.g.,* 28 U.S.C.S. §§ 591(a), 591(c) and 593(b). It is simply illogical to assume that Congress intended to give the Independent Counsel authority to file a federal criminal or civil action in state court.

Next, Mr. Hale argues that federal preemption can be found in the supporting regulations, 28 C.F.R. § 603.1 (1998), which define the jurisdiction of the Independent Counsel, as follows:

> (a) The Independent Counsel: In re Madison Guaranty Savings & Loan Association shall have jurisdiction and authority to investigate to the maximum extent authorized by part 600 of this chapter whether any individuals or entities have committed a violation of *any federal criminal law or civil law* relating in any way to President William Jefferson Clinton's or Mrs. Hillary Rodham Clinton's relationship with:
>
> (1) Madison Guaranty Savings & Loan Association;
>
> (2) Whitewater Development Corporation; or
>
> (3) *Capital Management Services*
>
> (b) The Independent Counsel: In re Madison Guaranty Savings & Loan Association shall have jurisdiction and authority to investigate other allegations or evidence of violation of any *federal criminal or civil law* by any person or entity developed during the Independent Counsel's investigation referred to above, and connected with or arising out of that investigation.

(c) The Independent Counsel: In re Madison Guaranty Savings & Loan Association shall have jurisdiction and authority to investigate any violation of section 1826 of title 28 of the U.S. Code, or any obstruction of the due administration of justice, or any material false testimony or statement in violation of *federal law*, in connection with any investigation of the matters described in paragraph (a) or (b) of this section.

(d) The Independent Counsel: In re Madison Guaranty Savings & Loan Association shall have jurisdiction and authority to seek indictments and to prosecute, or bring civil actions against, any person or entities involved in any of the matters referred to in paragraph (a), (b), or (c) of this section who are reasonably believed to have committed a violation of any *federal criminal or civil law* arising out of such matters, including persons or entities who have engaged in an unlawful conspiracy or who have aided or abetted any *federal offense.*

(Emphasis added.) Although this regulation specifically refers to the Independent Counsel's jurisdiction and authority to prosecute matters relating to Capital Management Services, which is an entity indirectly involved in the current litigation, the regulation qualifies in five instances that these powers only relate to violations of federal, not state, criminal or civil law.

▮ Reading the Act and the supporting regulations together, we reach the inescapable conclusion that neither the Act nor the supporting regulations in any way limit the State's power under the dual-sovereignty doctrine to prosecute any Whitewater figure or entity who may have also violated state law. Likewise, there is no conflict between the federal and state law in this matter. Finally, the cases cited by Mr. Hale are inapposite and do not support his preemption argument. *See Hamm v. City of Rock Hill*, 379 U.S. 306 (1964); *Baucom v. Martin*, 677 F.2d 1346 (11th Cir. 1982); *United States v. Daniels*, 929 F.2d 128 (4th Cir. 1991). Accordingly, we affirm the trial court's ruling that the state prosecution is not preempted by the Independent Counsel Reauthorization Act.

## IV. Mistrial

Finally, Mr. Hale contends that the trial court erred when it granted a mistrial, and thus, the State cannot bring him to trial a second time under the Double Jeopardy Clause. We have previously held that double jeopardy attaches in a jury trial once the jury is sworn. *Tipton v. State*, 331 Ark. 28, 959 S.W.2d 39 (1998). Thus, once the jury has been sworn and jeopardy attaches, the court can grant a mistrial without barring subsequent prosecution only if there is an "overruling necessity." *See Smith v. State*, 307 Ark. 542, 821 S.W.2d 774 (1992); *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986). Specifically, Ark Code Ann. § 5-1-112(3) (Repl. 1997) provides that:

> A former prosecution is an affirmative defense to a subsequent prosecution for the same offense under any of the following circumstances:
>
> * * *
>
> (3) The former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn or, if trial was before the court, after the first witness was sworn, unless the termination was justified by overruling necessity.

In making this determination, we have said that the State bears the burden of proving a manifest necessity, which is a circumstance that is "forceful and compelling" and is "in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care." *Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986); *Cody v. State*, 237 Ark. 15, 371 S.W.2d 143 (1963). We have also said that it is within the trial court's discretion to determine whether there is an "overruling necessity" that requires the grant of mistrial, and we will not disturb that ruling absent an abuse of discretion. *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991).

On appeal, Mr. Hale argues that the trial court granted the mistrial due to the unavailability of one of the State's

witnesses.[2] This argument is misplaced because the record clearly demonstrates that the trial court granted a mistrial due to Mr. Hale's unavailability and not because of the unavailability of the State's witness. In several cases, we have said that there is an over-ruling necessity to grant a mistrial when a juror, state witness, or the defense counsel is ill. *See, e.g., Shaw, supra* (sick juror); *Jones, supra* (sick state witness); *Franklin v. State*, 251 Ark. 223, 471 S.W.2d 760 (1971) (intoxicated defense counsel). Although we have never squarely dealt with the issue, several other jurisdictions have held that a defendant's illness is a proper ground for granting a mistrial, and that a subsequent retrial will not be prohibited by double jeopardy. *See, e.g., Loux v. United States*, 389 F.2d 911 (9th Cir. 1968); *In re Dunkerley*, 376 A.2d 43 (Vt. 1977); *Glover v. United States*, 301 A.2d 219 (D.C. 1973); *Jones v. State*, 187 S.W.2d 400 (Tex. Crim. App. 1945). We think that the reasoning of these cases is sound as it would likely be a violation of the defendant's constitutional right to confrontation if the trial was allowed to proceed in his absence. Moreover, we cannot say that the trial judge abused his discretion in light of his comments about leaving a sworn jury out for over two months in a highly publicized trial. Accordingly, we affirm the trial court's ruling that Mr. Hale's illness was an "overruling necessity," under Ark. Code Ann. § 5-1-112(3), that justified a mistrial, and that double jeopardy does not prevent his retrial.

Affirmed.

---

[2] At the conclusion of the April 23 hearing, Mr. Hale's attorneys planned to approach their client about the State's proposal to preserve the testimony of its witness. However, there is nothing in the record to indicate what happened to that proposal.