375 Ark. 466

**Roger and Ruth ANDERSON, d/b/a Anderson Auto Salvage, Appellant,**

v.

**BNSF RAILWAY COMPANY, Appellee.**

No. 08–232.

Supreme Court of Arkansas.

Jan. 30, 2009.

Eichenbaum, Liles & Heister, P.A., by Christopher O. Parker, Little Rock, for appellants.

Barrett & Deacon, by John C. Deacon, Brandon J. Harrison, and Andrew H. Dallas, Jonesboro, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This case requires the court to decide whether federal law preempts an order of the Arkansas State Highway Commission (Commission) forcing Burlington Northern Santa Fe Railway Company (BNSF) to reopen a private "at-grade" railroad crossing.[1] We hold that the Interstate Commerce Commission Termination Act of 1995 (ICCTA) preempts the Commission's jurisdiction in this instance; therefore, we vacate the Commission's order.

The private railroad crossing at issue in this case is located between the cities of

---

1.  An at-grade railroad crossing is on the same level of the railroad tracks, rather than over or under them.

Hoxie and Walnut Ridge and has been in existence for over eighty years.[2] In 1999, Roger and Ruth Anderson entered into an agreement to purchase the property accessed by the crossing and began using the property for their salvage yard business, Anderson Auto Salvage. BNSF and the Andersons later began negotiations to enter into an "Agreement for Private Crossing." BNSF drafted an agreement that, among other provisions: (1) granted the Andersons a license "to construct, maintain, and use" the crossing; (2) required the Andersons to pay BNSF $10,000; (3) required the Andersons to indemnify BNSF; and (4) required the Andersons to procure and maintain liability insurance in connection with the crossing. The draft agreement also provided that either party could terminate the license by serving the other party thirty-days' notice.

The Andersons refused to sign the agreement, and BNSF later posted notice that the crossing would be closed. After the Andersons contacted city officials in Walnut Ridge regarding the dispute, both the Walnut Ridge city attorney and the Andersons requested that the Commission hold a hearing on BNSF's proposed closing of the crossing. The Commission's counsel sent letters to BNSF asserting that an administrative hearing was required under Ark.Code Ann. § 23–12–304(b) before BNSF could close the crossing.[3] BNSF responded by contending that the Commission's authority to prevent it from closing a private crossing was preempted by federal law, and BNSF later barricaded the crossing.

The Commission held a hearing and ordered BNSF to reopen the crossing within ten days after it found that: the Commission's action was not preempted by ICCTA and was authorized by Ark.Code Ann. § 23–12–304(b); BNSF merely held an easement in perpetuity for railway purposes over the Andersons' property; there were no unsafe conditions that supported BNSF's decision to close the crossing; and the crossing was the Andersons' only access to their property. Further, the Commission ordered BNSF to draft an agreement with the Andersons, modeled on an earlier 1921 agreement regarding the crossing that was submitted into evidence, including a provision that stated that "Railway Company may seek to eliminate this crossing by requesting a hearing for that purpose, with notice to Licensee, before the Arkansas State Highway Commission." The Commission's order also prohibited BNSF from charging the Andersons a fee "because no fee was recited in the 1921 agreement," and likewise prohibited BNSF from requiring the Andersons to procure and maintain "insurance of any kind."

BNSF appealed the Commission's decision to the Craighead County Circuit Court, repeating its arguments before the Commission and asserting several procedural errors underlying the Commission's findings and order. Upon review, the circuit court vacated the Commission's order,

---

**2.** Department of Transportation (DOT) # 667982U.

**3.** Ark.Code Ann. § 23–12–304(b) (Repl.2002) provides:

(1) It shall be the duty of the Highway Commission, or any representative thereof, to make a personal inspection of any designated place where it is desired that a road or street, either public or private, cross any railroad in this state.

(2) Upon ten (10) days' notice as required by law and after a public hearing, the commission may make such order as in its judgment shall be just and proper. The order may provide for a crossing at grade, over or under the railroad, and shall be enforced as other orders by the commission.

holding that ICCTA preempted the Commission's authority over any matter in the case, including the safety issues raised by BNSF as well as "the terms and conditions which a railroad may impose in connection with permissive use of such private crossing." Additionally, the circuit court held that the Commission had essentially and unlawfully "prejudged" the issues underlying the dispute between BNSF and the Andersons and committed other procedural errors, as well as exceeded the Commission's constitutional and statutory authority by mandating the terms of the private crossing agreement.

The Andersons bring this appeal, arguing that the circuit court erred in holding that the Commission's authority was preempted by ICCTA. The Andersons also argue that the circuit court erred for the following reasons: their property right in the private crossing was not a revocable license; the Commission properly allocated the burden of proof according to the hearing procedures set out under Ark.Code Ann. § 23–12–304; substantial evidence supported the Commission's findings; and that any procedural errors "did not justify [the circuit court] declaring the hearing officers findings and conclusion void."

■■ We review the Commission's order under the Arkansas Administrative Procedure Act (APA), Ark.Code Ann. §§ 25–15–201 to –218 (Repl.2002 & Supp. 2007). Review of administrative agency decisions is limited in scope. *Ark. Dep't of Human Servs. v. Bixler,* 364 Ark. 292, 219 S.W.3d 125 (2005). The appellate court's review is directed not to the decision of the circuit court but to the decision of the administrative agency. *Id.* The APA provides that a reviewing court may reverse or modify the agency's decision if the decision: (1) violates the constitution or a statute; (2) exceeds the agency's statutory authority; (3) is affected by an error of law; (4) is procedurally unlawful; (5) is unsupported by substantial evidence in the record; or (6) is arbitrary, capricious, or is an abuse of discretion. Ark.Code Ann. § 25–15–212(h); *Ark. Dep't of Correction v. Bailey,* 368 Ark. 518, 247 S.W.3d 851 (2007).

■ The primary question presented by this case is whether 49 U.S.C. § 10501(b) of ICCTA preempts the Commission's exercise of jurisdiction to order BNSF to reopen a private crossing under Ark.Code Ann. § 23–12–304. The Supremacy Clause of the United States Constitution provides that state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); U.S. Const. art. VI, cl. 2. Under the principle of federal law supremacy, there are three ways that federal law can preempt state law: (1) where Congress makes its intent to preempt state law explicit in statutory language; (2) where state law regulates conduct in a field that Congress intends for the federal government to occupy exclusively; or (3) where there is an actual conflict between state and federal law. *English v. Gen. Elec. Co.,* 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Where a federal statute contains an express preemption clause, the focus of statutory construction is "on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

As the title of the legislation implies, ICCTA abolished the Interstate Commerce Commission, while simultaneously creating the Surface Transportation Board (STB) to replace it and to perform many of the same regulatory functions. *See Friberg v. Kan. City S. Ry. Co.,* 267 F.3d 439,

442 (5th Cir.2001). ICCTA contains an express preemption clause, stating as follows:

> (b) The jurisdiction of the Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b) (2000).

This court has addressed issues of federal preemption and ICCTA in two cases—*Ouachita R.R., Inc. v. Circuit Court of Union County*, 361 Ark. 333, 206 S.W.3d 811 (2005) and *25 Residents of Sevier County v. Ark. Highway & Transp. Comm'n*, 330 Ark. 396, 954 S.W.2d 242 (1997). In the former, Ouachita Railroad brought an ejectment action against a married couple, the Harbours, alleging that they had wrongfully taken possession of the railroad's land and removed the company's railroad tracks. The defendant Harbours answered the complaint and counterclaimed, contending that they acquired the land through adverse possession and that Ouachita Railroad had abandoned the tracks.

Ouachita Railroad filed a motion for summary judgment, arguing that "the STB had exclusive jurisdiction over the abandonment or discontinuation of use of the right-of-way, and that the STB's authority to regulate the matter preempted all state law relating to it." 361 Ark. at 338–39, 206 S.W.3d at 813. The chancery court issued a letter opinion, finding that the question of whether the property had been abandoned by the railroad could only be resolved by the STB, but the court retained jurisdiction to address state-law claims after the STB's final determination. As directed by the chancery court, the Harbours filed a petition with the STB requesting a waiver of the filing fee, which was declined. Ouachita Railroad then filed a supplemental motion for summary judgment, arguing that, because the STB denied the Harbours' request to waive the filing fee, "since the court had already determined that the STB had exclusive jurisdiction over the Harbours' counterclaim, it was appropriate for the court now to grant its motion for summary judgment." *Id.* at 339–40, 206 S.W.3d at 813. The chancery court denied the motion for summary judgment on the grounds that the Harbours' equitable defenses were within its jurisdiction, regardless of the abandonment issue.

The railroad then petitioned this court for a writ of prohibition, asserting that ICCTA preempted the chancery court's jurisdiction. Upon review, this court framed the question as "whether the Harbours' counterclaim against the railroad for abandonment and adverse possession of the railroad's right-of-way is exclusively within the jurisdiction of the STB." *Id.* at 343, 206 S.W.3d at 816. The court held that "Section 10501(b) clearly provides that the STB's jurisdiction over the abandonment of tracks is exclusive and preempts any remedies available under state law." *Id.* The court noted that it had previously acknowledged "the broad language of § 10501(b)" and "its preemptive effect" in a case involving the closing of a

railroad agency station or depot closings, *25 Residents of Sevier County, supra. Id.* The court also cited cases involving the STB's predecessor, the Interstate Commerce Commission (ICC), such as *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 319–23, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981), in which the Supreme Court held that Congress granted to the ICC exclusive and "plenary authority to regulate, in the interest of interstate commerce, rail carriers' cessations of service on their lines."[4] Turning to the Harbours' counterclaims involving adverse possession and other equitable defenses they asserted to establish a right to the land at issue, the *Ouachita Railroad* court held that these issues were also preempted under 49 U.S.C. § 10501, stating as follows:

> As already noted, the ICC's, and now STB's, jurisdiction over the "construction, acquisition, operation, abandonment, or discontinuance of ... tracks" is exclusive. 49 U.S.C. § 10501(b)(2) (2000). Were the circuit court to quiet title over the land in favor of the Harbours based on their counterclaim of adverse possession or to acknowledge any right to the land by the Harbours, this would necessarily result in the acquisition of the right-of-way by the Harbours and in the discontinuation of the use of the same by the railroad. Such a determination clearly falls within the exclusive jurisdiction of the STB, as demonstrated by the clear language of the statute as well as the case law cited above....

Because any determination by the circuit court on the matter of title or any right to the land would interfere with STB's jurisdiction as provided for in the statute, we hold that the circuit court is wholly without jurisdiction to determine the abandonment and adverse possession claims but also any equitable defenses asserted by the Harbours that seek to bestow upon them any right to the use of the land. It is the STB that has exclusive jurisdiction over such matters.

*Ouachita R.R., Inc. v. Circuit Court of Union County,* 361 Ark. at 345, 206 S.W.3d at 817.

In *25 Residents of Sevier County, supra,* relied upon in *Ouachita Railroad,* a railroad filed an application with the Commission to close an agency station in Dierks, Arkansas, in order to consolidate operations with those in a nearby city. After the Commission filed notice of the proposed closing, which became effective ninety days later, twenty-five residents of Dierks filed a petition requesting that the Commission order the railroad to reopen the agency station. The Commission requested that the parties present briefs addressing the question of whether ICCTA preempted state jurisdiction of the discontinuation of railroad agency stations. Following a hearing, the Commission determined that it did not have jurisdiction over the matter, because the STB had held "exclusive jurisdiction over 'transportation by rail carriers' as part of the interstate

4. *See also Cedarapids, Inc. v. Chicago, Cent. & Pac. R.R. Co.,* 265 F.Supp.2d 1005 (N.D.Iowa 2003) (holding that to the extent that a state-law claim sought to force CC & P to abandon the track in question, such claims were preempted by ICCTA); *Trustees of the Diocese of Vt. v. State,* 145 Vt. 510, 496 A.2d 151 (1985) (holding that a declaratory-judgment action in state court to determine whether an easement for railroad purposes had been abandoned interfered with the ICC's authority to determine the issue); *City of Seattle v. Burlington N. R.R. Co.,* 105 Wash.App. 832, 22 P.3d 260, 262 (2001) (stating that language of § 10501 grants the STB "clear, broad, and unqualified" jurisdiction over the statute's listed activities).

rail network" and dismissed the residents' petition. 330 Ark. at 398–99, 954 S.W.2d at 243 (quoting the Commission's order). The Pulaski County Circuit Court affirmed the Commission.

On appeal, this court examined the language of 49 U.S.C. § 10501(b) and first determined that, "[c]learly, the act covers 'transportation by rail carriers' and the discontinuation of their carriers' related facilities." *Id.* at 400, 954 S.W.2d at 244. The court then considered the question of whether the agency stations were "facilities" within the meaning of § 10501(b), and held as follows:

> Given the broad language of the act itself, its statutory framework, and considering the recent decisions interpreting the act, we believe it is clear that Congress intended to preempt the states' authority to engage in economic regulation of rail carriers. The preemptive strike, we hold, includes regulation of agency station discontinuations. Accordingly, we conclude § 23–12–611, which gives the AHT Commission the authority to regulate such closings, is preempted by the ICC Termination Act of 1995.

*Id.* at 401, 954 S.W.2d at 244.

Although this court held that the broad language of 49 U.S.C. § 10501(b) preempted state court action in both *Ouachita Railroad, Inc.* and *25 Residents of Sevier County,* neither case involved railroad crossings as in the present appeal, and ICCTA does not expressly mention railroad crossings. However, a recent decision by the U.S. Fifth Circuit Court of Appeals involves railroad crossings, and it is instructive because it is in accord with this court's construction of ICCTA. In *Franks Investment Co. v. Union Pacific Railroad Co.,* 534 F.3d 443 (2008), a property owner filed an action in state court, alleging that he had a property right in

four railroad crossings, and sought an injunction to prevent Union Pacific from closing two of the crossings, and to force it to reopen two it had already closed. The preliminary-injunction motion and possessory action was removed and consolidated in federal district court, which held that the state-law claim was expressly preempted by ICCTA.

Upon review, the Fifth Circuit framed the issue as "whether railroad crossings fit within the purview of 'transportation by rail carriers,' thereby evincing Congress' intent to preempt state-law claims relating to ownership of the closings." *Id.* at 446 (quoting 49 U.S.C. § 10501(b)).

The *Franks* court first recognized ICCTA's broad definition of "transportation" as follows:

> The ICCTA defines "transportation" to include, *inter alia:* "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, *or equipment of any kind related to the movement of passengers or property, or both, by rail,* regardless of ownership or an agreement concerning use."

*Id.* (quoting 49 U.S.C. § 10102(9)(A)). The *Franks* court then noted that the federal district court had held that crossings are within the STB's exclusive jurisdiction because ICCTA's definition of "transportation" includes "the movement of passengers or property ... by rail," and "[i]n that regard, the district court found crossings affect safety, drainage, and maintenance, which necessarily affect rail travel." *Id.* The Fifth Circuit agreed, rejecting the argument that, because "crossings" were not explicitly listed in the ICCTA definition of "transportation," it evidenced Congress's intent to exclude crossings from the STB's exclusive jurisdiction. Instead, ICCTA's broad language and definition of transportation—to include " *'property ... or equipment of any kind* related to the

movement of passengers or property or both, by rail'" — clearly "belies the notion that Congress intended 'transportation' to include only items listed in its definition." *Id.* (emphasis original).

At issue here, as in *Franks,* is whether a state proceeding to reopen a closed railroad crossing falls within the STB's exclusive jurisdiction under the language of § 10501. The Andersons contend that it does not, and argue that this court should follow the North Dakota Supreme Court holding in *Home of Economy v. Burlington Northern Santa Fe Railroad,* 694 N.W.2d 840 (N.D.2005). In *Home of Economy,* BNSF closed a private crossing on a spur line that provided access from a road to property owned by the appellant. Home of Economy filed suit against BNSF to reopen the crossing, alleging that it possessed an easement for access to the property. BNSF responded by claiming that it held easements by prescription, necessity, and estoppel. The trial court dismissed the suit, holding that it lacked jurisdiction because ICCTA vested the STB with exclusive jurisdiction over the regulation of railroad operations. *Id.* at 841. The trial court specifically "concluded the closing of the grade crossing constituted regulation of rail transportation under the ICCTA, because the grade crossing affected rail cars going from State Mill and Elevator [Roads] and could also affect liability for accidents at the crossing." *Id.* Thus, the trial court held that the STB's exclusive jurisdiction preempted any state court action by Home of Economy.

On appeal, Home of Economy argued that the ICCTA only grants exclusive federal jurisdiction to the STB "in those cases involving substantial economic impact on a railroad's operations." *Id.* The North Da-

kota Supreme Court agreed, holding that "ICCTA does not explicitly preempt state law regarding grade crossings" because "[t]he preemption language in the ICCTA explicitly preempts many issues 'with respect to regulation of rail transportation,' but does not specifically refer to states' traditional police power regarding grade crossings." *Id.* at 846 (quoting ICCTA). Although the North Dakota Supreme Court acknowledged that "some courts have broadly construed Congress's preemption language in ICCTA and have concluded that language preempted state or local laws," it interpreted a selection of ICCTA's legislative history to reflect that Congress only intended to economically regulate the interstate railway system while leaving intact states' police power. *Home of Economy,* 694 N.W.2d at 844.[5]

The Andersons' reliance on *Home of Economy* is misplaced. First, in contrast to *Home of Economy,* this court specifically noted the broad language and preemptive reach of 49 U.S.C. § 10501(b) in *Ouachita Railroad, Inc., supra,* and *25 Residents of Sevier County, supra.* More importantly, this court applied the language broadly to preempt state judicial and regulatory action, respectively, in those cases. Second, the Commission's order in this case clearly impacts BNSF's railroad operations and "transportation by rail carriers" for purposes of ICCTA. The Commission ordered BNSF: (1) to reopen the private crossing within ten days; (2) to redraft a 1921 private crossing agreement to apply to the Andersons; and (3) that "[n]o fee may be charged by the railroad for entry into this agreement with the Andersons, as no fee was charged in the 1921 agreement" and "[n]o insurance of any kind may be required by

---

5. The North Dakota Supreme Court cited H.R.Rep. No. 104–311, at 95–96 (1995), *as*   *reprinted in* 1995 U.S.C.C.A.N. 793, 807–08.

the railroad from the Andersons as no insurance was required in the original [1921] agreement." This action, as in *Franks,* necessarily impacts "transportation by rail," affecting both BNSF's economic interests and the movement of passengers or property. As noted by the Fifth Circuit in *Franks, supra,* ICCTA's definition of "transportation" includes *"property ... or equipment of any kind* related to the movement of passengers or property or both, by rail, regardless of ownership or an agreement concerning use." 49 U.S.C. § 10102(9)(A) (2000) (emphasis added).

We hold that ICCTA preempts the Commission's jurisdiction over this private railroad crossing dispute and we vacate the Commission's order. Federal law preemption deprives the Commission's jurisdiction under the facts presented in this case and invests exclusive jurisdiction in the STB. 49 U.S.C. § 10501(b) (STB has exclusive jurisdiction over railroad operations, tracks, and facilities). Decisions of the STB may be appealed to the appropriate United States circuit court of appeals. 28 U.S.C. § 2321(a) (2006) (judicial review of STB orders); 28 U.S.C. § 2342(5) (2006) (exclusive jurisdiction to determine validity of STB final orders lies with the courts of appeals).

Because we hold that the Commission's jurisdiction is preempted by ICCTA, the Anderson's remaining arguments are moot.

Commission's order vacated.