Argued and submitted September 17, 2008, reversed April 15, 2009

# BURLINGTON NORTHERN
# & SANTA FE RAILWAY COMPANY,
*Petitioner,*

*v.*

# DEPARTMENT OF TRANSPORTATION,
*Respondent.*

Department of Transportation
115831; A133519

206 P3d 261

Kathryn M. Pratt argued the cause for petitioner. On the briefs were James L. Hiller and Hitt Hiller Monfils Williams LLP.

Erin C. Lagesen argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Petitioner Burlington Northern & Santa Fe Railroad Co. (BNSF) seeks judicial review of an order of the Oregon Department of Transportation (ODOT) imposing civil penalties for violations of OAR 741-125-0010, which generally prohibits trains from blocking railroad-highway grade crossings for more than 10 minutes. BNSF argues that ODOT's order is invalid because, among other reasons, OAR 741-125-0010 is preempted by 49 USC section 10501(b), the preemption clause of the federal Interstate Commerce Commission Termination Act (ICCTA). We agree and therefore reverse.

The material facts are neither extensive nor disputed. ODOT received a complaint that, on February 3, 2004, two BNSF trains blocked a crossing just south of BNSF's rail yard in Klamath Falls—one in the morning for 34 minutes, and one in the afternoon for 20 minutes. The first train stopped to conduct a federally mandated brake test after additional cars were added to it in the yard. The second stopped to conduct a federally mandated "1,000 mile" test. ODOT investigated and issued two complaints to BNSF for violating OAR 741-125-0010. At the hearing on the complaints, BNSF argued, among other things, that that administrative rule is preempted by the ICCTA. ODOT rejected BNSF's arguments and imposed a civil penalty for each violation. BNSF petitioned for review.

■   OAR 741-125-0010 provides that, with certain exceptions that are not pertinent here,[1] a train may not block a highway crossing for "a period of time in excess of 10 continuous minutes between the hours of 6 a.m. and 10 p.m." BNSF argues that ODOT erred in concluding that OAR 741-125-0010 is not preempted by 49 USC section 10501(b), which provides:

---

[1] OAR 741-125-0010(4) provides:

"These rules do not apply to:

"(a)  A continuously moving train in the same direction;

"(b)  A blockage caused by a wreck, derailment, act of nature, or other emergency condition not under the control of the railroad; or

"(c)  Emergency or other operational procedures required by federal law."

"(b)  The jurisdiction of the [Surface Transportation] Board over—

"(1)  transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

"(2)  the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

"is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."

According to BNSF, that statute expresses a clear intent by Congress to preempt state regulation of railroad operations. BNSF contends that a state regulation allowing a state agency to fine a railroad for blocking a grade crossing during the conduct of its operations is a state law remedy "with respect to regulation of rail transportation."

■      ODOT responds that the ICCTA does not preempt *all* state regulation affecting rail transportation. Rather, ODOT argues, state regulation survives preemption if it does not discriminate against or unreasonably burden rail transportation. ODOT contends that OAR 741-125-0010 is neither discriminatory nor unreasonably burdensome and that BNSF failed to show otherwise.[2]

In reply, BNSF argues that, contrary to ODOT's assertion, the ICCTA preemption provision does not contain any "unreasonable burden" or "discrimination" requirement.

---

[2] ODOT does not attempt to defend the position taken by the administrative law judge (ALJ) at the hearing below, which the ODOT director adopted in his order. The ALJ concluded that section 10501(b) could not be read to preempt all state regulations dealing with rail transportation, because, in her view, that reading would render meaningless 49 USC section 20106 of the Federal Rail Safety Act (FRSA), which expressly authorizes states to enact and enforce laws "related to railroad safety or security." We disagree. Not all regulations pertaining to railroad safety constitute regulation of rail transportation—for example, a state regulation that required warning devices at a highway crossing beyond what is required by the FRSA.

■ When a court evaluates the preemptive scope of a federal statute, "[t]he purpose of Congress is the ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 US 470, 485, 116 S Ct 2240, 135 L Ed 2d 700 (1996) (internal quotation marks omitted). Where, as here, Congress has included a specific provision governing the preemptive effect of the statute, we must "identify the domain expressly pre-empted." *Cipollone v. Liggett Group, Inc.*, 505 US 504, 517, 112 S Ct 2608, 120 L Ed 2d 407 (1992). 49 USC section 10501(b) expressly grants the Surface Transportation Board (STB) exclusive jurisdiction over, among other things, rail transportation, the operation of tracks and facilities, and remedies related to the operating rules and practices of rail carriers. It thus broadly precludes state regulation of those matters. The text says nothing about limiting preclusion to state regulations that unreasonably burden or discriminate against rail transportation.

Nonetheless, in support of its argument that the preclusive effect of the ICCTA is thus limited, ODOT relies on opinions from several of the federal circuit courts. *See Emerson v. Kansas City Southern Ry. Co.*, 503 F3d 1126 (10th Cir 2007); *New York Susquehanna v. Jackson*, 500 F3d 238 (3d Cir 2007); *Green Mountain R.R. Corp. v. Vermont*, 404 F3d 638 (2d Cir), *cert den*, 546 US 977 (2005). Careful examination of those opinions reveals that those limitations apply only to laws of general applicability that have an effect on rail transportation but do not specifically target it.

For example, in *New York Susquehanna*, the Tenth Circuit concluded that "a state law that affects rail carriage survives preemption if it does not discriminate against rail carriage and does not unreasonably burden rail carriage." 500 F3d at 254. However, that conclusion followed its analysis of prior cases from other federal circuit courts and opinions from the STB, which provide context in which the court's conclusion must be understood.

The court began by observing that the ICCTA "preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more

remote or incidental effect on rail transportation.' " *Id.* at 252 (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F3d 1324, 1331 (11th Cir 2001)). It also observed, however, that "courts and the [STB] have rightly held that it does not preempt *all* state regulation affecting transportation by rail carrier." *Id.* (emphasis in original). The court noted that the STB had ruled that the ICCTA " 'does not usurp the right of state and local entities to impose appropriate public health and safety regulation on interstate railroads,' so long as those regulations do not interfere with or unreasonably burden railroading." *Id.* (quoting *King County*, 1996 WL 545598, at *3-4 (STB 1996)). The court went on to note that the STB "has explained that uniform building, plumbing, and electrical codes generally are not preempted because they do not unreasonably interfere with railroad operations." *Id.* at 253. Finally, the court quoted the Second Circuit's opinion in *Green Mountain R.R. Co.*:

> " 'It therefore appears that states and towns may exercise traditional police powers over the development of railroad property, at least to the extent that the regulations protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions. Electrical, plumbing and fire codes, direct environmental regulations enacted for the protection of the public health and safety, and other *generally applicable,* nondiscriminatory regulations and permit requirements would seem to withstand preemption.' "

*New York Susquehanna*, 500 F3d at 253-54 (quoting *Green Mountain R.R. Corp.*, 404 F3d at 643) (emphasis added). Thus, understood in that context, the court's statement in *New York Susquehanna* that "a state law that affects rail carriage survives preemption if it does not discriminate against rail carriage and does not unreasonably burden rail carriage," *id.* at 254, refers to state laws of general applicability, not those that specifically regulate rail transportation. The statements in the other cases on which ODOT relies similarly appear in the context of discussing generally applicable laws.

■ In short, to the extent that the preclusive effect of section 10501(b) is limited to state laws that discriminate against or unreasonably burden rail transportation,[3] that limitation applies only in the context of laws of general applicability.

The state regulation at issue here, OAR 741-125-0010, is not a law of general applicability. It is, by its express terms, an "operating rule" and a "regulation of rail transportation." *See Friberg v. Kansas City Southern Ry. Co.*, 267 F3d 439, 443 (5th Cir 2001) ("Regulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains * * *."). Because those matters fall under the exclusive jurisdiction of the STB, OAR 741-125-0010 is preempted by 49 USC section 10501(b).

ODOT also relies on *Eagle Marine Industries v. Union Pacific*, 363 Ill App 3d 1166, 845 NE2d 869 (App Ct 2006), *rev'd on other grounds*, 227 Ill 2d 377, 882 NE2d 522 (2008), in which the Illinois Appellate Court held that a state statute prohibiting a train from obstructing a grade crossing for more than 10 minutes was not preempted under the ICCTA. Like OAR 741-125-0010, the Illinois statute includes an exception to the blocking prohibition for continuously moving trains. According to the court, because the statute does not apply to moving trains, "it cannot be deemed to indirectly dictate the length, the speed, or the schedule of interstate trains." *Id.* at 1180, 845 NE2d at 880. Thus, it reasoned, the statute does not "interfere with * * * railroad operations." *Id.* at 1181, 845 NE2d at 882.

We disagree with the Illinois court's reasoning. Not all railroad "operations" are conducted while the train is continuously moving. For example, a train must stop if cars are to be added or removed. As occurred in this case, part of the train may block a crossing while such operations take place. Dictating where and for how long a train may stop for such purposes is, in our view, a regulation of railroad operations.

---

[3] We express no opinion as to whether discrimination or the reasonableness of a burden on rail transportation are proper parts of the preemption analysis under the ICCTA.

In summary, because OAR 741-125-0010 specifically targets rail transportation, it is preempted by the ICCTA. ODOT erred in concluding otherwise.

Reversed.