697 S.E.2d 567

Mary Robyn PRIESTER, Individually and as Natural Mother/Next of Kin, and Personal Representative of the Estate of James Lloyd Priester, Appellant,

v.

Preston Williams CROMER, Stage Light Management, d/b/a Showgirls(z); and Lloyd Brown, individually and doing business as Showgirls(z), and Nikki D's Inc., and Ford Motor Co., Defendants,

Of whom Ford Motor Co. is, Respondent.

No. 26846.

Supreme Court of South Carolina.

Heard March 16, 2010.

Decided Aug. 2, 2010.

Rehearing Denied Sept. 2, 2010.

Darrell T. Johnson, Jr., of Hardeeville, and James B. Richardson, Jr., of Columbia, for Appellant.

Curtis L. Ott and Carmelo B. Sammataro, both of Turner, Padget, Graham & Laney, of Columbia, and Robert W. Powell, of Dickinson Wright, of Detroit, MI, for Respondent.

William C. Wood, Jr., of Nelson, Mullins, Riley & Scarborough, of Columbia, for Amicus Curiae Product Liability Advisory Council.

Justice KITTREDGE.

This case concerns whether Federal Motor Vehicle Safety Standard 205 (49 C.F.R. § 571.205 (1971)) preempts a state law products liability claim premised solely on a manufacturer's choice of tempered glass for a vehicle's side windows. Federal Motor Vehicle Safety Standard 205 (Regulation 205) mandates that "[g]lazing materials [1] for use in motor vehicles ... shall conform" to the American National Standard Institute "safety code for safety glazing materials." Courts across the country faced with this issue have struggled with the preemptive effect, if any, of Regulation 205 and have reached opposite conclusions. Pending resolution from the United States Supreme Court, we join those jurisdictions finding the federal regulation preempts state law, and therefore, we affirm the trial court's grant of summary judgment in favor of Ford Motor Company.

## I.

In the early morning hours of August 17, 2002, Preston Cromer was driving a 1997 Ford F–150 pickup truck at excessive speed near St. George, South Carolina, when he drove off the road and rolled the truck several times. Appellant's son, James Lloyd Priester, who was in the rear seat of the truck and not wearing his seatbelt, was ejected and died at the scene. Cromer and Priester, both of whom were under twenty-one years old, were apparently intoxicated after they had allegedly been served alcohol at Showgirls(z), a strip club located in Santee, South Carolina.

---

1.  The term "glazing materials" here refers to the glass used in a motor vehicle.

Appellant filed a products liability claim against Ford.[2] Specifically, Appellant alleged Ford "breached said warranty by using inappropriate glazing materials which would retain occupants inside the vehicle, and which would not shatter on impact." Ford moved for summary judgment, arguing Regulation 205 preempted the claim. Ford asserted Regulation 205 provided car manufacturers with options of types of glass they were permitted to use, and since Ford used one of the glass options, the state law products liability suit was preempted by the regulation. Although the court recognized the Fifth Circuit Court of Appeals issued an opinion holding Regulation 205 did not preempt state law, the trial court agreed with Ford's position and granted its motion for summary judgment.

## II.

■■ The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution and provides that any state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Two "cornerstones" of United States Supreme Court preemption jurisprudence provide: 1) the purpose of Congress is the ultimate touchstone in every preemption case; and 2) courts should begin with a presumption against preemption. *See Wyeth v. Levine,* —— U.S. ——, 129 S.Ct. 1187, 1195, 173 L.Ed.2d 51 (2009).

■ A federal law may either expressly preempt a state law through specific language clearly stating its intent or it may impliedly preempt a state law through field preemption or conflict preemption. *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Field preemption occurs when the scheme of federal regulation is so pervasive that it is reasonable to infer that Congress left no room for the states to regulate. *Id.* On the other hand, conflict preemption occurs where compliance with both federal and state regulations is physically impossible or where the state regulation "stands as an obstacle to the accomplishment and execution of

---

**2.** Additionally, Appellant filed a negligence suit against Cromer and a dram shop liability suit against Showgirls(z) and Nikki D's alleging the sale of alcohol to minors.

the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). This case implicates conflict preemption.

### a. Regulation 205

Under the authority of the National Traffic and Motor Vehicle Safety Act of 1966, the National Highway Traffic Safety Administration (NHTSA) promulgated Regulation 205. This regulation provides:

S1. Scope. This standard specifies requirements for glazing materials for use in motor vehicles and motor vehicle equipment.

S2. Purpose. The purpose of this standard is to reduce injuries resulting from impact to glazing surfaces, to ensure a necessary degree of transparency in motor vehicle windows for driver visibility, and to minimize the possibility of occupants being thrown through the vehicle windows in collisions. . . .

Regulation 205 does not itself specify which types of glazing materials may be used in motor vehicles. Rather, it requires adherence to the following safety code developed by the American National Standards Institute:

S5.1.1.6

Multipurpose passenger vehicles. Except as otherwise specifically provided by this standard, glazing for use in multipurpose passenger vehicles shall conform to the requirements for glazing for use in trucks as specified in ANS Z26.

ANS Z26 provides that laminated glass or tempered glass may be used on the side windows of motor vehicles, so long as the glass meets certain testing requirements.[3] Laminated glass differs from tempered glass in that laminated glass consists of two or more sheets of glass held together by an intervening layer or layers of plastic material. Laminated glass will crack and break under sufficient impact, but the pieces of glass tend to adhere to the plastic. Conversely, tempered glass consists of a single sheet of specially treated glass, and when broken, the entire piece immediately shatters into innumerable small,

---

3. Laminated glass is the only type of glazing material manufacturers are allowed to use on windshields.

granular pieces. Thus, it can be stated generally that tempered glass is safer for vehicle occupants wearing seatbelts, where the risk of ejection is reduced, because it provides less risk of additional injuries. Laminated glass is safer for unbelted passengers, where the risk of ejection is increased, because it is likely to keep a passenger inside the vehicle due to the "adhering" quality of the glass.

### b. NHTSA Study

During the 1990s, NHTSA began a research program to study rollover accidents in an effort to maximize the protection of occupants. NHTSA focused on Regulation 205 and considered whether to modify the regulation to mandate manufacturers to use advanced glazing [4] on side windows in order to reduce the likelihood of ejections. *See* NHTSA, Rollover Prevention, Advance Notice of Proposed Rulemaking, 57 Fed. Reg. 242 (Jan. 3, 1992). After studying the costs and benefits associated with the use of advanced glazing in side windows, NHTSA issued a notice of withdrawal, indicating Regulation 205 would not be modified. *See* Notice of Withdrawal, 67 Fed. Reg. 41, 365 (June 18, 2002). In the final report explaining the decision not to require advanced glazing, NHTSA reported that it found advanced glazing increased the risk of neck and back injuries in rollover accidents. NHTSA was "extremely reluctant to pursue a requirement that may increase injury risk for belted occupants to provide safety benefits primarily for unbelted occupants, by preventing their ejection from the vehicle," and thus, "the agency will not continue to examine potential regulatory requirement for advanced side glazing."

### c. United States Supreme Court

In *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), the United States Supreme Court granted a writ of certiorari from the District of Columbia Circuit Court of Appeals in order to resolve a dispute among courts across the country regarding whether Regulation 208 [5] preempted state law products liability claims. Reg-

---

**4.** Advanced glazing refers to laminated glass and glass-plastic glazing material, which can withstand more impact before shattering compared to tempered glass.

**5.** Federal Motor Vehicle Safety Standard 208 (49 C.F.R. § 571.208).

ulation 208 specifies performance requirements for passive restraint systems for the protection of occupants in vehicle crashes in order to reduce the number of deaths and severity of injuries. The regulation set forth a detailed timeline in which manufacturers were required to gradually introduce airbag technology prior to 1997. Manufacturers were permitted to choose which restraint, among a range of different passive restraint devices, e.g.: airbags; automatic seatbelts; ignition interlock devices, to incorporate into their vehicles.

The plaintiff in *Geier* filed a state law products liability claim against Honda. Although the vehicle was equipped with a proper seatbelt system and was in compliance with Regulation 208, the plaintiff alleged the vehicle was defective because Honda failed to equip the vehicle with airbags. The United States Supreme Court determined that in promulgating Regulation 208, the Department of Transportation deliberately provided the manufacturer with a range of choices among different passive restraint devices to be gradually introduced. The Court found this phase-in program would lower costs, encourage technological developments, overcome technical safety problems, and win consumer acceptance—"all of which would promote [Regulation] 208's safety objectives." *Id.* at 876, 120 S.Ct. 1913. In a five to four decision, the Supreme Court held that the plaintiff's suit would stand as an obstacle to the accomplishment of this objective, and therefore, Regulation 208 preempted the state law action.

#### d. Appellate Courts

Of the three appellate courts that have faced this issue, one court found no preemption, while two courts found Regulation 205 preempted any state law claim.[6]

In *O'Hara v. General Motors*, 508 F.3d 753 (5th Cir.2007), the plaintiff brought suit alleging General Motors' use of

---

6. Several trial courts and districts courts have faced this issue. *See Erickson v. Ford Motor Co.*, 2007 WL 2302121 (D.Mont.2007); *Martinez v. Ford Motor Co.*, 488 F.Supp.2d 1194 (M.D.Fla.2007) (finding preemption) and *Raley v. Hyundai Motor Co.*, 2010 WL 199971 (W.D.Okla. 2010); *Spruell v. Ford Motor Co.*, 2008 WL 906648 (W.D.Ark.2008); *Burns v. Ford Motor Co.*, 2008 WL 222711 (W.D.Ark.2008); *MCI Sales and Serv., Inc. v. Hinton*, 272 S.W.3d 17 (Tex.App.2008) (finding no preemption).

tempered glass in the side window was unreasonably danger-
ous and contended the use of advanced glazing would have
decreased the likelihood of passenger ejection. The Fifth
Circuit first found Regulation 205 differed from Regulation
208. The court then reviewed the text and history of Regula-
tion 205 and determined "it is best understood as a minimum
safety standard." *Id.* at 762. Thus, the Fifth Circuit held the
regulation did not preempt the plaintiff's products liability
suit.

Conversely, when faced with the same issue, the West
Virginia Supreme Court held Regulation 205 did preempt a
claim against a manufacturer in which the plaintiff alleged his
vehicle was defective because Ford used tempered glass in the
side window. *Morgan v. Ford Motor Co.,* 224 W.Va. 62, 680
S.E.2d 77 (2009). Although the court recognized the Fifth
Circuit's position in *O'Hara,* the court found "[Regulation] 205
permits the manufacturer to make a choice between available
safety options for side-window glass; a design defect claim
would foreclose choosing one of those options." *Id.* at 94. In
reaching this conclusion, the court observed that although this
suit concerned only one glass option—tempered glass—other
lawsuits could theoretically eliminate all options allowed by
Regulation 205 and "eviscerate the unitary federal regulation
and leave manufacturers with no options for glazing materials
in vehicle side windows." *Id.* The court ultimately found its
decision was controlled by *Geier* and held Regulation 205
preempted the suit because the purpose of the regulation was
to give manufacturers the option of choosing between laminat-
ed and tempered glass in side windows.

In *Lake v. Memphis Landsmen, L.L.C.,* the Court of Ap-
peals of Tennessee agreed with the West Virginia Supreme
Court and found Regulation 205 preempted a state law prod-
ucts liability claim. 2010 WL 891867 (Tenn.Ct.App. March 15,
2010). The court determined that in issuing the notice of
withdrawal and declining to require advanced glazing, NHTSA
intended to adopt a policy that allows the option of tempered
glass based on cost and safety considerations. Thus, the court
held because "a rule requiring laminated glass in side win-
dows, as proposed by the [plaintiff's state law] claims ...
would serve as 'an obstacle to the accomplishment and execu-

tion of' a federal policy" Regulation 205 preempted the suit. *Id.* at 9 (citing *Geier*, 529 U.S. at 881, 120 S.Ct. 1913).

## III.

Clearly, courts across the country are struggling over Regulation 205 and whether it preempts conflicting state law actions. Nonetheless, in the absence of a determination from the United States Supreme Court on this matter, we must render our best judgment as to whether Regulation 205 provides a manufacturer with options and, therefore, preempts Appellant's suit, or merely provides a safety floor and allows Appellant's suit to go forward.

█ We agree with the reasoning espoused in *Morgan* and *Lake* and hold Regulation 205 preempts this suit. In our view, the purpose of this regulation is to provide an automobile manufacturer with a range of choices among different types of glazing materials, as opposed to providing a minimum standard. Regulation 205 directs manufacturers that they "shall conform" to ANS Z26, which specifically provides manufacturers the option of using tempered glass for side windows.[7] In issuing the notice of withdrawal, NHTSA declined to modify Regulation 205 and require advanced glazing. Thus, the notice of withdrawal kept Regulation 205 intact, thereby preserving the manufacturer's option to use tempered glass on side windows.

To allow this suit to go forward would sanction a jury verdict finding the Ford F–150 pickup truck to be defectively designed solely because it selected the federally authorized choice of tempered glass. Because we believe such a result would stand as an obstacle to achieving the purposes and objectives of Regulation 205, this state tort action presents a conflict between federal law and state law. Thus, Regulation 205 preempts this state law claim based on Ford's selection of tempered glass for the side windows of the F–150 pickup

---

7. We recognize the Foreword to ANS Z26 contains language which supports a finding of no preemption, but the Foreword also provides that it "is not part of" ANS Z26. A careful review of the actual standard, including its technical and testing requirements, sets forth clear standards and choices for manufacturers and, therefore, favors a finding of preemption.

truck. *Compare Wyeth,* 129 S.Ct. 1187 (finding no preemption where the regulation provided a safety floor for warning labels for drug manufacturers, and the FDA did not prohibit manufacturers from adding further warnings to the label; therefore, a state law tort claim would not stand as an obstacle to the accomplishment of Congress' purposes).

## IV.

We affirm the trial court's order granting Ford's motion for summary judgment.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.