706 S.E.2d 6

The CITY OF CAYCE, Appellant,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, Respondent.

No. 26925.

Supreme Court of South Carolina.

Heard Nov. 17, 2010.

Decided Feb. 7, 2011.

396

Danny C. Crowe, Shannon F. Bobertz, and R. Hawthorne Barrett, all of Turner, Padget, Graham & Laney, of Columbia, for Appellant.

Ronald K. Wray and James M. Dedman, IV, both of Gallivan, White & Boyd, of Greenville, for Respondent.

Gray T. Culbreath, of Collins & Lacy, of Columbia, for Amicus Curiae Association of American Railroads.

Chief Justice TOAL.

The City of Cayce ("City") cited Norfolk Southern Railway Company ("Norfolk") for violating a public nuisance ordinance,

Cayce, S.C. CODE § 28–251. The citation was based on the condition of one of Norfolk's bridges that was covered with rust and graffiti. A municipal judge found Norfolk guilty of violating the ordinance. The circuit court reversed based on its determination the ordinance was preempted by federal law. The City appeals. We affirm.

### FACTS/PROCEDURAL BACKGROUND

Norfolk is a corporation and common carrier of freight by rail. It operates trains in twenty-two states and has over 20,000 miles of track. As part of these operations, Norfolk ships goods in interstate commerce through South Carolina and maintains tracks, yards, bridges, trestles, and other facilities within the state.

Norfolk owns or has a leasehold interest in a railroad bridge crossing over U.S. Highway 321 in Cayce, South Carolina that is at the center of this dispute ("Bridge").[1] The Bridge was constructed in 1955 and has been part of Norfolk's rail operations since that time.

In a series of communications from 2005 to 2007, the City asked Norfolk to paint the Bridge due to the rust and graffiti covering the structure. The City noted the Bridge is located on "a main thoroughfare" in the City and "is an eyesore and a nuisance" that "creates a negative impression about the City and [Norfolk] for the thousands of people who drive through and reside in the area." The City asserted the Bridge's condition detracts from the value of property in the surrounding area. Norfolk declined, stating it did not have funds available for the refurbishment.

On May 1, 2007, the City amended its municipal ordinance, Cayce, S.C. CODE § 28–251, to provide a public nuisance shall include certain structures above street grade that are "rusted." Section 28–251 provides in relevant part as follows:

Public nuisances affecting public order shall include, but not be limited to, the following:

(1) All structures bearing graffiti;

. . . .

1. The Bridge is referred to as "Bridge R 111.6" in court documents.

(7) All privately-owned structures elevated above street grade and extending over or across public streets or highways, such as overpasses, bridges, trestles or elevated passageways, whose exterior finish is destroyed, decayed, dilapidated, deteriorated or rusted.

The 2007 amendment added only subsection (7), as subsection (1) regarding structures bearing graffiti existed in the prior version of the ordinance.[2]

Thereafter in 2007, the City cited Norfolk for violating section 28–251 based on the graffiti and rust covering the Bridge. After a bench trial, the municipal judge found Norfolk guilty of violating the ordinance and fined Norfolk $500.00.

Norfolk appealed to the circuit court, which reversed the municipal judge's ruling in an order filed July 30, 2009. The circuit court concluded the municipal ordinance is preempted by both the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C.A. §§ 10101–16106 (2007 & Supp. 2010) and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C.A. §§ 20101–20167 (2007 & Supp.2010). Based on its ruling regarding federal preemption, the circuit court noted it was unnecessary to reach the additional grounds raised by Norfolk in support of reversal. The City appeals from this order.

## STANDARD OF REVIEW

■ In criminal appeals from a municipal court, the circuit court does not conduct a de novo review; rather, it reviews the case for preserved errors raised to it by an appropriate exception. *City of Rock Hill v. Suchenski*, 374 S.C. 12, 646 S.E.2d 879 (2007); *Rogers v. State*, 358 S.C. 266, 594 S.E.2d 278 (Ct.App.2004); *City of Landrum v. Sarratt*, 352 S.C. 139, 572 S.E.2d 476 (Ct.App.2002); *see also* S.C.Code Ann. § 14–25–105 (Supp.2009) ("There shall be no trial de novo on any appeal from a municipal court."). "Therefore, our scope of

---

2. Section 28–261 declares public nuisances unlawful: "No person or entity shall create any nuisance or public nuisance in the city, and no person shall by action or inaction allow or permit a nuisance or public nuisance to occur or continue on any property which he owns, manages, leases, controls, possesses or occupies." Cayce, S.C. CODE § 28–261.

review is limited to correcting the circuit court's order for errors of law." *Suchenski,* 374 S.C. at 15, 646 S.E.2d at 880; *see also City of Aiken v. Koontz,* 368 S.C. 542, 629 S.E.2d 686 (Ct.App.2006) (observing that in reviewing criminal cases, the appellate court's review is limited to reversal for errors of law).

## ANALYSIS

On appeal, the City argues the circuit court erred in reversing the municipal court conviction because federal law does not preempt enforcement of the City's ordinance.

The City contends that, under the plain language of the City's ordinance, structures covered by rust and graffiti fall within the definition of a public nuisance. Further, there are no factual disputes involved in this appeal as both parties agree that the Bridge had extensive rust and graffiti on it when the City issued the citation. The City argues the circuit court therefore committed an error of law in concluding the ordinance is rendered inapplicable to Norfolk based on federal preemption. We disagree.

### I. SUPREMACY CLAUSE

The Supremacy Clause in Article VI of the United States Constitution establishes the principle of federal preemption:

This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made ... under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

Since the decision in *M'Culloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *see also Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) ("It is basic to this constitutional command that all conflicting state provisions be without effect.").

■ The Supreme Court of the United States has held there are two cornerstones to federal preemption jurisprudence. *Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). First, the purpose of Congress is the ultimate touchstone in every preemption case. *Id.* at 1194. Second, in all preemption cases, particularly in those in which Congress has legislated in a field that the states have traditionally occupied, the courts start with the assumption that the historical police powers of the states were not to be superseded by the federal act unless that was the clear and manifest purpose of Congress. *Id.* at 1194–95.

■ The intent of Congress may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Altria Group, Inc. v. Good,* 555 U.S. 70, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008); *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608. In the absence of an express congressional command, state law is preempted if the law actually conflicts with federal law, or if federal law so thoroughly occupies the legislative field as to make reasonable the inference that Congress has left no room for the states to supplement it. *Altria Group,* 129 S.Ct. at 543; *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608.

Thus, "[u]nder the principle of federal law supremacy, there are three ways that federal law can preempt state law: (1) where Congress makes its intent to preempt state law explicit in statutory language; (2) where state law regulates conduct in a field that Congress intends for the federal government to occupy exclusively; or (3) where there is an actual conflict between state and federal law." *Anderson v. BNSF Ry. Co.,* 375 Ark. 466, 291 S.W.3d 586, 589 (2009); *see also Priester v. Cromer,* 388 S.C. 425, 428, 697 S.E.2d 567, 569 (2010) ("A federal law may either expressly preempt a state law through specific language clearly stating its intent or it may impliedly preempt a state law through field preemption or conflict preemption.").

## II. ICCTA Preemption

■ In the current matter, the circuit court ruled the City's ordinance is preempted by the ICCTA.

"As the title of the legislation implies, ICCTA [the ICC Termination Act] abolished the Interstate Commerce Commission, while simultaneously creating the Surface Transportation Board (STB) to replace it and to perform many of the same regulatory functions." *Anderson,* 291 S.W.3d at 589.

Section 10501(a)(1) of the ICCTA generally sets forth the STB's "jurisdiction over transportation by rail carrier." 49 U.S.C.A. § 10501(a)(1) (2007). Subsection (b) provides that the jurisdiction of the STB is exclusive, and it contains an explicit preemption clause:

**(b)** *The jurisdiction of the Board* over—

**(1)** *transportation by rail carriers,* and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, *and facilities of such carriers; and*

**(2)** the construction, acquisition, *operation,* abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, *or facilities,* even if the tracks are located, or intended to be located, entirely in one State,

*is exclusive.* Except as otherwise provided in this part, the remedies provided under this part *with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.*

*Id.* § 10501(b) (emphasis added).

■ When a federal statute contains an express provision regarding preemption, the preemption inquiry must focus on the plain wording of that provision, which generally contains the most reliable evidence as to whether Congress intended to preempt state law. *CSX Transp. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

A Georgia federal district court has remarked, "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n,* 944 F.Supp. 1573, 1581 (N.D.Ga.1996). The ICCTA "grant[s] . . . exclusive jurisdiction over almost all matters of rail regulation to the STB." *Id.*

By its language, the ICCTA "broadly precludes state regulation of those matters [specified in 49 U.S.C.A. § 10501(b)]." *Burlington N. & Santa Fe Ry. Co. v. Dep't of Transp.,* 227 Or.App. 468, 206 P.3d 261, 263 (2009).

The broad nature of Congress's preemption under the ICCTA is further evidenced by the ICCTA's expansive definitions. The ICCTA defines a "railroad" as including the following:

(A) *a bridge,* car float, lighter, ferry, and intermodal equipment *used by or in connection with a railroad;*

(B) the road used by a rail carrier and owned by it or operated under an agreement; and

(C) a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation[.]

49 U.S.C.A. § 10102(6) (2007) (emphasis added). The ICCTA defines "transportation" to encompass:

(A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property[.]

*Id.* § 10102(9). We agree with the circuit court's observation that, considering the definitions contained in section 10102, "when [s]ection 10501(b) grants the STB exclusive jurisdiction over 'railroads' and 'transportation by rail carriers,' it includes the railroad's bridges and any operations conducted thereupon for the purpose of transportation."

The municipal judge found ICCTA preemption did not apply because there was no specific federal regulation covering the appearance of railroad bridges. However, we hold that ICCTA preemption does apply, even if there is no direct conflict with a specific regulation, if the ordinance interferes with the railroad's ability to conduct its operations or otherwise unreasonably burdens interstate commerce. Direct conflict is only one circumstance under which state law is preempted by

federal law. *Anderson*, 291 S.W.3d at 589; *Priester*, 388 S.C. at 428, 697 S.E.2d at 569.

The Court of Appeals of Washington found an express conflict was not required in a case holding two city ordinances, one regulating the length of time railroad switching activities could block city streets and the other prohibiting switching during peak hours, were preempted by the ICCTA. *City of Seattle v. Burlington N. R.R. Co.*, 105 Wash.App. 832, 22 P.3d 260 (2001). The court explained:

> Here, the City of Seattle claims the ordinances are merely local traffic regulations which are not expressly preempted, or preempted in any other way, specifically because there is no conflict between the ICCTA and the city's traffic ordinances. We agree that state and local governments may retain certain police powers and may apply non-discriminatory regulation to protect the public health and safety, but under the ICCTA the actions or regulations of those governments may not have the effect of foreclosing or restricting the railroad's ability to conduct its operation or otherwise unreasonably burden interstate commerce.

*Id.* at 262; *see also City of Auburn v. United States Gov't*, 154 F.3d 1025, 1031 (9th Cir.1998) (stating "the pivotal question is not the nature of the state regulation, but the language and congressional intent of the specific federal statute" and holding state and local permitting laws were preempted by the ICCTA even though they concerned "environmental" rather than "economic" regulation because jurisprudence supports a broad reading of Congress's preemption intent, not a narrow one).

In the current appeal, James Carter, the Chief Engineer of Bridges and Structures for Norfolk, testified that Norfolk operates trains in twenty-two states on over 20,000 miles of track. Carter stated Norfolk does not paint bridges for cosmetic purposes, but that Norfolk had offered to allow the City to do it, and Norfolk would have donated the expense for its employees to provide flagging services, but the City had declined the offer. Carter stated the City did not raise any structural concerns about the Bridge.

He testified the most recent inspection at the time of trial had been on April 11, 2007, and no safety or structural issues

were then noted. Carter stated maintaining the structural integrity of the Bridge and other structures was Norfolk's most important consideration, and that Norfolk had to allocate its funds for safety issues rather than for aesthetic concerns. Carter stated graffiti on the Bridge did not have any impact on the Bridge's structural integrity or safety. Further, there had been no notation on the inspection report that the rust posed a safety hazard.

Carter asserted the impact of the City's ordinance on Norfolk would be more than just requiring it to paint the Bridge. He stated many of the older bridges were covered with lead paint, and any painting would require removal of the old lead paint in an environmentally safe manner. He estimated it could cost approximately $250,000 to paint the entire Bridge, including the lead removal. Carter opined that if Norfolk were required to do that for all of its bridges in South Carolina, it would cost millions of dollars, and this would have an impact upon Norfolk's ability to devote its resources to safety-related projects. Carter stated it would be difficult to operate a system of over 20,000 miles of track if the regulations in each community were different, so a uniform set of regulations was "extremely important."

The Association of American Railroads ("the Association") has filed an Amicus Curiae Brief in support of the circuit court's determination that the City's ordinance is preempted by the ICCTA. The Association states this "case presents an issue of great significance to the railroad industry as a whole."

The Association opines that, if the City's nuisance ordinance were upheld, and other municipalities across the nation similarly declared railroad trestles, bridges, and other structures bearing graffiti or rust to be a public nuisance and subjected the railroads to criminal penalties or forced them to undertake remedial measures, "the interference with rail transportation operations throughout the national rail network, as well as the adverse economic consequences to the railroad industry, would be significant and would constitute an unreasonable burden on interstate rail transportation."

The Association argues case law makes clear that a state or a local law, whether premised on environmental, zoning, nuisance, or as here, "aesthetic" grounds, is not saved from

preemption under the ICCTA by its ostensible regulatory purpose or by the descriptive nomenclature used if its effect otherwise falls with the scope of the ICCTA.

We hold the circuit court correctly determined the ICCTA preempts enforcement of the nuisance ordinance against Norfolk. Bridges are expressly considered part of the railroad's operations under the definitional section of the ICCTA and the enforcement of the City's ordinance against Norfolk will have an effect on its railroad operations that falls within the scope of the ICCTA. *See, e.g., Village of Mundelein v. Wis. Cent. R.R.,* 227 Ill.2d 281, 317 Ill.Dec. 664, 882 N.E.2d 544, 552 (2008) ("A state law may not frustrate the operation of federal law by claiming some purpose other than that specifically addressed by the federal law. Rather, the supremacy clause renders invalid any state legislation that frustrates the full effectiveness of federal law."); *Krentz v. Consol. Rail Corp.,* 589 Pa. 576, 910 A.2d 20, 34 (2006) ("[I]t is the **effect** of the state law that matters in determining preemption, not its intent or purpose.") (quoting *Teper v. Miller,* 82 F.3d 989, 995 (11th Cir.1996) (alteration in original)); *cf. Pace v. CSX Transp., Inc.,* 613 F.3d 1066 (11th Cir.2010) (holding Georgia property owners' nuisance claim against CSX for noise and smoke from increased traffic caused by adding a side track near their property was preempted by the ICCTA; although the owners argued they did not seek a remedy that would impact CSX's operations, the Eleventh Circuit held *any* kind of remedy was preempted by the ICCTA, which expressly covered side tracks).

Further, although the aesthetic appearance of bridges is not specifically covered in the ICCTA, the challenged provision need not be in direct conflict with the ICCTA for preemption to apply. *See, e.g., Anderson v. BNSF Ry. Co.,* 375 Ark. 466, 291 S.W.3d 586, 592 (2009) (holding although the ICCTA did not expressly mention railroad crossings, the jurisdiction of the ICCTA was exclusive over anything having an economic impact on the railroad and thus was preempted by the act (citing *Franks Inv. Co. v. Union Pac. R.R. Co.,* 534 F.3d 443 (5th Cir.2008))).

■ The purpose of the ICCTA is to prevent the development of a patchwork of local and state regulations affecting

the railroad industry, as the enactment of differing standards and requirements would inevitably be detrimental to the orderly functioning of the industry as a whole.

The Federal Railroad Administration has recently adopted Bridge Safety Standards, 75 F.R. 41282–01 (July 15, 2010) (to be codified at 49 C.F.R. pts. 213 & 237); currently available at 2010 WL 2771218. It is noted therein that "[t]here are nearly 100,000 railroad bridges in the United States" and "[t]hese bridges are owned by over 600 different entities." The standards were not in effect at the time this action arose, but they indicate the intent that federal law govern the maintenance and condition of railroad bridges. The need for uniformity is readily apparent based on the number of bridges throughout the United States and the diversity of ownership.

Although the City's public nuisance ordinance is ostensibly directed to aesthetic issues, its enforcement against Norfolk does have an impact on its operations since railroad bridges and trestles are, by federal law, considered part of the operations of the industry. Accordingly, we affirm the circuit court's determination that the ICCTA preempts enforcement of the City's ordinance against Norfolk.

### Conclusion

We conclude the circuit court properly determined the ICCTA preempts enforcement of the City's public nuisance ordinance against Norfolk and affirm on this basis. Consequently, we need not reach the remaining issues presented on appeal.[3]

PLEICONES, KITTREDGE, HEARN, JJ., and Acting Justice HOWARD P. KING, concur.

---

3. Because we find the ordinance is preempted based on the ICCTA, we need not consider the additional basis for preemption found by the circuit court under the FRSA. *Cf. City of Seattle v. Burlington N. R.R. Co.,* 105 Wash.App. 832, 22 P.3d 260, 263 (2001) (remarking consideration of whether an ordinance was additionally preempted under the FSRA was "not necessary" after finding it was already preempted by the ICCTA). None of the remaining issues asserted by the City were ruled upon below and, therefore, were not preserved for appeal. *See Ulmer v. Ulmer,* 369 S.C. 486, 490, 632 S.E.2d 858, 861 (2006) ("An appellate court will not consider issues on appeal which have not been preserved for appellate review."). Having ruled on the merits of the

circuit court's order, it is unnecessary to entertain Norfolk's argument regarding an additional sustaining ground. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate court may find it unnecessary to discuss respondent's additional sustaining grounds when its affirmance is grounded in an issue addressed by the lower court.").